# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RICHARD ALFONSO SANTIAGO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 12-4113-JWL |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding error in the Commissioner's evaluation of the medical opinions, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

**I.    Background**

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD, alleging disability beginning April 4, 2004. (R. 22, 153-60). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. He alleges the Administrative Law Judge (ALJ) erred in failing to develop the record regarding his mental impairments; in evaluating the credibility of his allegations of symptoms resulting from his impairments; and in evaluating the medical opinions. He also claims the ALJ failed to apply the correct legal standard at step four of the sequential evaluation process.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the

determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any Listed Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ's evaluation of the opinions of the medical sources is not sufficiently specific to make clear the weight the adjudicator gave to them, or the reasons for that weight. The court will not address Plaintiff's remaining allegations of error, and on remand Plaintiff may present those arguments to the Commissioner who will address the need for further development of the record or for further consideration of those arguments.

## II.    Evaluation of the Medical Providers' Opinions

Plaintiff notes that the ALJ discounted the medical opinions of treating physicians Dr. Childers and Dr. Franco because the opinions are "too restrictive," but he argues this is erroneous because the only evidence used to support the finding was minimal daily activities which is insufficient as a matter of law to reject two concurring treating source opinions. (Pl. Br. 13-14) (citing Tolbert v. Heckler, 814 F.2d 1456, 1462-64 (10th Cir. 1987)). Next, Plaintiff argues that the report of Dr. Burger should have been rejected because Dr. Burger was provided no background information or medical records, because Dr. Burger's 2008 report was "stale" in light of later evidence, because the examination

4

lasted only ten minutes and Plaintiff was not even asked to disrobe, and because Plaintiff presented evidence that Dr. Burger had had hospital privileges permanently revoked in the past and had been found not to be a credible witness in an earlier court proceeding.[2] Id. at 15-18. Later in his Brief, Plaintiff noted that counselor Dennis[3] completed an assessment noting several moderate mental limitations, but that the ALJ found Plaintiff's depression does not cause more than minimal limitations in his mental ability to work. Id. at 22-23. Plaintiff argues that it was error for the ALJ to discount counselor Dennis's findings on the basis that counselor Dennis is not an acceptable medical source, because

---

[2]Plaintiff also attached an exhibit to his Brief purporting to show that the Appeals Council has granted review in another case because of Dr. Burger's involvement. (Doc. 1, Attach. 1). Because the court's review is statutorily limited to consideration of only the administrative record before the Commissioner, the court does not consider this exhibit. 42 U.S.C. § 405(g) (sentence four) ("upon the pleadings and transcript of the record").

[3]In referring to "counselor Dennis," Plaintiff cites to a "Medical Assessment of Ability to do Work-Related Activities (Mental)" appearing in the record as Exhibit 30F. (R. 600-01). The ALJ cited to Exhibit 30F as the medical assessment of a social worker, "C. G. Dinines." (R. 26-27, 30). Apparently following the lead of the ALJ, the Commissioner in her Brief discusses the "opinion of therapist C. G. Dinines." (Comm'r Br. 12) (citing R. 600-01).

On the first page of the medical assessment in Exhibit 30F, the "Treating/Examining Source['s]" identity is printed on the form as "Dennis Crawford LISW." (R. 600). The second page of that report has been signed in the space labeled "Provider Signature." In handwriting that is by no means clear, the form is signed by what could properly be characterized as either "Crawford. G. Dinines. LISW," or "Crawford. G. Dennis. LISW." (R. 601).

Because the report contains a printed identification of Dennis Crawford, and because the court will assume that Plaintiff knows the proper name of his medical care providers, the court uses "Mr. Dennis" to refer to the author of the report at issue. For the same reasons, the court refers to Mr. Dennis as a male, although the ALJ refers to "C. G. Dinines" as a female. (R. 26-27, 30). There can be no doubt that each of these references is to the author of the report at Exhibit 30F (R. 600-01).

5

Plaintiff was diagnosed with depression by two acceptable medical sources, and the regulations, rulings, and case law contemplate that the opinion of an "other medical source" may be used to consider the severity of and limitations resulting from medically determinable impairments. Id. at 23 (citing 20 C.F.R. § 404.1513(a); Soc. Sec. Ruling (SSR) 06-3p; Frantz v. Astrue, 509 F.3d 1299, 1301-02 (10th Cir. 2007)).

The Commissioner argues that the ALJ properly evaluated the opinions of the medical providers, properly gave greater weight to the opinion of Dr. Burger than to the opinion of either Dr. Childers or Dr. Franco, and properly assigned "significant weight" to the opinions of the nonexamining state agency medical sources. She points to evidence in the record tending to support the ALJ's findings and argues that Plaintiff did not dispute the ALJ's discounting of Mr. Dennis's opinion. Finally, she argues that there is no merit to Plaintiff's attempt to reject Dr. Burger's opinion on the basis of loss of medical privileges or other credibility issues.

While the court finds some merit in the arguments of both parties, it reminds the parties that its duty is to review the ALJ's decision, determine whether the correct legal standard was applied and, if so, to determine whether substantial record evidence supports the ALJ's determination. In the circumstances of this case, the court is unable to answer either question with regard to the medical source opinions, and it must remand for the Commissioner to properly weigh all of the opinions of the medical sources, to include the opinion of the "other" source, Mr. Dennis.

## A. The ALJ's Findings

In the decision at issue, the ALJ discussed and summarized the treatment and/or examinations and medical opinions provided by treating physicians, Dr. Childers and Dr. Franco, and by the nontreating physician, Dr. Burger. (R. 24-26). He also discussed and summarized the "medical assessment of ability to do work-related activities (mental)" provided by Mr. Dennis. (R. 26-27). The ALJ did not mention any treatment provided by Mr. Dennis, and the court finds no treatment records from Mr. Dennis in the administrative record. Later, in his RFC assessment, the ALJ explained his evaluation of the opinions of the medical sources:

> In reaching this conclusion regarding the claimant's residual functional capacity, the undersigned has given careful consideration to the medical opinions expressed by the medical sources of record, in accordance with SSR 96-2p and 96-6p. Drs. Franco and Childers, treating physicians, have established physical residual functional capacity profiles that restrict the claimant to a less than sedentary level of exertion. There are some inconsistencies in the reports; for example, in regards to the claimant's ability to do repetitive handling or fingering. The undersigned is not inclined to accept the opinion/conclusions of these two physicians as their assessments appear to be too restrictive. The record as a whole indicates a higher level of functioning. The claimant is able to drive, do household chores, go for walks, work on his computer and maintain a relationship with a significant other as well as his medical providers. Further, these two physicians completed mental residual functional capacity profiles and their opinion has been considered. However, neither of these two doctors are mental health providers and the record does not establish the presence of depression that would result in moderate or marked limitations. Further, Ms. Dinines, a licensed social worker, is not considered to be an acceptable treating source under SSR 06-3p. Nevertheless, her assessment appears to be too restrictive and she herself has indicated that the claimant has only a slight limitation in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods.

7

> She remarked about the claimant's concentration difficulties, but the claimant has credibly testified that he can work on his computer and deal with the handling of e-mails. The claimant has been prescribed medication for his depression and his depression does not pose functional limitations that are severe. Further, Dr. Burger has opined that the claimant could work for gainful employment and was employable full time. This opinion has been considered as well. Residual functional capacity profiles were provided by the non examining state agency consultants who concluded that in spite of his impairments, the claimant would retain the capacity to work at least a light level of exertion. The Administrative Law Judge notes that although they were non-examining physicians, under SSR 96-6p, their opinions are entitled to consideration in conjunction with all of the evidence. The Administrative Law Judge accords their opinions significant weight in determining the claimant's residual functional capacity because their opinion is consistent with and supported by the record as a whole.

(R. 29-30).

### B. <u>Legal Standard for Evaluating Opinions of Medical Sources</u>

Medical opinions may not be ignored and, unless a treating source opinion is given controlling weight, <u>all</u> medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. 20 C.F.R. § 404.1527(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2013). A physician who has treated a patient frequently over an extended period of time (a treating source)[4] is expected to have greater insight into the patient's medical condition, and his opinion is

---

[4] The regulations define three types of "acceptable medical sources:"
"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.
"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. <u>Id.</u>
"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. <u>Id.</u>

generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot, 814 F.2d at 1463 (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

If a treating source opinion is not given controlling weight, the inquiry does not end. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300). After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion and, "if the ALJ rejects the opinion completely, he must then give 'specific, legitimate

9

reasons' for doing so." Watkins, 350 F.3d at 1301 (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

Recognizing that an increasing number of claimants receive medical care from health care providers who are not physicians or other "acceptable medical sources," the Commissioner promulgated SSR 06-3p. West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp. 2013). In that ruling, the Commissioner noted that:

> medical sources who are not "acceptable medical sources," such as . . . licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Id., Rulings, 330-31.

SSR 06-3p explains that such opinions will be evaluated using the regulatory factors for evaluating medical opinions; id. at 331-32 (citing 20 C.F.R. § 404.1527); and that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Id. at 333; see also Frantz, 509 F.3d at 1302 (remanding for consideration of a nurse-practitioner's opinion in light of SSR 06-3p).

### C. Analysis

The court notes that in the ALJ's evaluation of the medical source opinions quoted above, the ALJ stated that he accorded "significant weight" to the opinions of the nonexamining state agency consultants who reviewed the record medical evidence during the initial and reconsideration determinations by the state agency. (R. 30). However, the ALJ did not state the weight accorded to any of the other opinions. This is error unless the decision otherwise makes clear the weight accorded to the opinions, and the reasons for that weight.

With regard to the opinions of Drs. Franco and Childers, it is clear the ALJ rejected the opinions of these treating physicians. (R. 30) ("The undersigned is not inclined to accept the opinion/conclusions of these two physicians as their assessments appear to be too restrictive."). However, as Plaintiff argues, the ALJ did not provide a legally sufficient reason to reject these treating source opinions. The ALJ stated that he rejected these opinions because the "record as a whole indicates a higher level of functioning," but the only evidence cited in support of that finding was that "[t]he claimant is able to drive, do household chores, go for walks, work on his computer and maintain a relationship with a significant other as well as his medical providers." (R. 30). These activities constitute only minimal daily activities, and as Plaintiff suggests, the Tenth Circuit has long held that "such limited activities in themselves do not establish that one can engage in light or sedentary work activity." Talbot, 814 F.2d at 1462 (citing Broadbent, 698 F.2d 407; and Markham v. Califano, 601 F.2d 533 (10th Cir. 1979)).

Despite the prohibition from using minimal daily activities alone, the decision does not point to any other record evidence to suggest that Plaintiff is able to engage in a "higher level of functioning."

The ALJ stated that Dr. Burger "opined that the claimant could work for gainful employment and was employable full time." (R. 30). He also stated that he had considered Dr. Burger's opinion. <u>Id.</u> Other than this implication that he had given Dr. Burger's opinion "significant weight," he did not state the weight he had given Dr. Burger's opinion, and he did not explain why he had given such weight to that opinion. The ALJ's failure to explain the weight given to Dr. Burger's opinion is made all the more egregious because Plaintiff provided the ALJ with evidence that Dr. Burger had his privileges permanently revoked at one hospital; that in a malpractice suit in state court, findings had been made that "Dr. Burger was not a credible witness;" and that Dr. Burger did not conduct a physical examination of Plaintiff and did not ask Plaintiff to disrobe when he purportedly performed his consultative examination of Plaintiff. (R. 547, 577-80, 584, 590). At the hearing, the ALJ acknowledged that Plaintiff "raise[d] an issue with the CE [consultative examination] of Dr. Burger," but refused to strike Dr. Burger's report from the record because Plaintiff's argument "goes more to the weight to be given that particular report." (R. 61). In these circumstances, it is all the more incumbent upon the ALJ to explain the weight given to Dr. Burger's report, and the reasons for that weight, and to explain how he assessed the evidence presented against the credibility of

Dr. Burger's report. He discussed none of this in the decision, but went on to leave the clear impression that he gave Dr. Burger's opinion "significant weight."

Finally, the court addresses the ALJ's consideration of Plaintiff's allegations of mental impairments. Plaintiff requested a psychological consultative evaluation on September 24, 2008 (R. 149) and repeated the request on November 24, 2009 (R. 148) and at the hearing on December 2, 2009. (R. 100). The ALJ denied Plaintiff's request because the record contained reports from the treating sources regarding Plaintiff's mental impairments and the ALJ didn't think "that a consultative examination is going to shed a lot more light upon that issue." (R. 101).

In summarizing the treating source opinions of Drs. Childers and Franco, the ALJ acknowledged that both physicians opined regarding certain "marked" limitations and certain "moderate" limitations in Plaintiff's mental abilities. (R. 26). The ALJ also summarized Mr. Dennis's opinion in which Mr. Dennis opined that Plaintiff has "slight" limitations in eight mental abilities, and "moderate" limitations in eleven mental abilities. (R. 26-27). Nonetheless, and despite that he cited to no other evidence regarding Plaintiff's mental abilities, the ALJ found that Plaintiff has no limitations in the mental area of activities of daily living, mild limitations in the mental areas of social functioning and of concentration, persistence, or pace, and has had no episodes of decompensation which have been of extended duration. (R. 27). Consequently he determined Plaintiff's mental impairments are not "severe" within the meaning of the Act because they do not

cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities. (R. 27).

Because the ALJ denied Plaintiff's request for a psychological consultative evaluation, the only evidence in the record regarding Plaintiff's mental limitations were the treating records of Drs. Franco and Childers, and the opinions regarding mental abilities completed by Drs. Franco and Childers, and Mr. Dennis. From the fact that he found Plaintiff's mental impairment not "severe," it is clear that the ALJ rejected the opinion of each of these medical providers regarding Plaintiff's mental limitations. However, the only reason given for discounting the treating physicians' opinions regarding mental limitations was that they are not mental health providers and "the record does not establish the presence of depression that would result in moderate or marked [mental] limitations." (R. 30). The court notes that there seems to be an inconsistency in the ALJ's consideration of the treating physician's opinions regarding Plaintiff's mental impairments. As noted above, he declined to order a psychological evaluation because the record contained reports from the treating sources regarding Plaintiff's mental impairments and he didn't think "that a consultative examination is going to shed a lot more light upon that issue." (R. 101). However, in the decision he rejected these same treating source opinions regarding Plaintiff's mental impairments because the treating physicians are not mental health providers. (R. 30).

Contrary to the ALJ's rationale, a treating physician is qualified to give a medical opinion as to a claimant's mental state as it relates to his alleged disability, and the ALJ

14

may not discredit that opinion on the ground that the treating physician is not a psychiatrist. Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987); Barrager v. Astrue, Civ. A. No. 06–1150–WEB, 2007 WL 2377049 at *7 (D. Kan. Aug. 13, 2007); Wren v. Astrue, Civ A. No. 06–1158–MLB, 2007 WL 1531804 at *4 (D. Kan. May 23, 2007). While specialization is one of the regulatory factors for weighing medical opinions, the record in this case contains no opinion from any acceptable medical source who is a mental health provider to which the ALJ might accord greater weight than to the opinions of Drs. Franco and Childers. Moreover, the ALJ did not explain, in the face of three medical source opinions that Plaintiff has at least moderate limitations resulting from his mental impairments, how the record evidence demonstrates that Plaintiff's mental impairments do not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities.

The decision is not sufficiently specific to make clear the weight the ALJ gave to the medical source opinions and the reasons for that weight, as required by the holding of Oldham, and the requirements of SSR 06-3p. Remand is necessary for the Commissioner to properly weigh the opinions of the medical sources, including Mr. Dennis and Drs. Franco, Childers, and Burger, and to explain the weight accorded each opinion in accordance with the regulations, rulings, and case law, and based upon the record evidence.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 6th day of March 2014, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**